**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**THERMON ARRINGTON**                                                  **PETITIONER**

**VERSUS**                              **CIVIL ACTION NO.  3:13CV1080- HTW-LRA**

**ARTHUR SMITH  and**
**ATTORNEY GENERAL of the**
**STATE OF MISSISSIPPI**                                               **RESPONDENTS**

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Thermon Arrington was convicted in the Circuit Court of Newton County,

Mississippi, and seeks federal habeas relief under 28 U.S.C. § 2254.  The Court finds that

the petition should be dismissed because the State court's ruling was not contrary to, or an

unreasonable application of, clearly established federal law.

Arrington was convicted of manslaughter in the Circuit Court of Newton County,

Mississippi.  He was sentenced as a habitual offender to 20 years in the custody of the

Mississippi Department of Corrections.  The relevant facts are described in the state

court's opinion as follows:

> A birthday party was held on September 21, 2008, at the home of
> Addie Carol Smith, the mother of the victim, Shasta. Addie was hosting the
> party for her oldest daughter, Trina Smith. There were ten to fifteen people
> at the party in Newton, Mississippi, with most of the guests being members
> of Shasta's family. Arrington was at the party as a guest of Shasta's sister,
> Renee Smith. As the party progressed, alcohol was consumed by the
> various party goers. Shasta and his brother, Willie Joe Smith, began
> arguing; because of this, Shasta and Renee made Willie Joe leave the party.
> At approximately 5:00 p.m., Shasta and Arrington had an argument outside
> Addie's home. Shasta's sister, Valencia Burton, attempted to disrupt the
> argument by walking Shasta away from the house down a hill to his sister's
> house.  At this point, there is a disagreement as to what happened next. All
> of the State's witnesses testified that Arrington went to his car, retrieved a
> pistol, and shot the pistol once in the air. He then approached Shasta and
> Valencia and stood between them trying to cool down the argument. Some
> of the State's witnesses, who had seen the killing, testified that Shasta was
> unarmed. Arrington said Shasta had a red-handled hunting knife. Valencia
> confirmed Shasta had a knife, but she testified that he dropped it to his side

well before he was shot, and Shasta never used it in a threatening manner toward Arrington. Officers with the Newton Police Department who investigated the scene never found a red-handled hunting knife.

Valencia said as Arrington was approaching them, she kept pushing Shasta away from Arrington until she and Shasta were against the house. After Arrington had pushed Valencia out of the way, Arrington and Shasta were face to face. The State's witnesses testified that Arrington put the gun to Shasta's face, and Shasta told Arrington to get the "f* * * out of [his] face" and slapped the gun down. Arrington maintained Shasta had a red-handled hunting knife. Valencia testified that Shasta had the knife, but he held it at his side at all times. Arrington told Shasta: "B* * * * * *, I'm going to kill you," and Shasta replied: "Well if you are gonna do it, do it." Arrington then put the gun to Shasta's neck and shot him. Shasta did not die immediately but succumbed to his injury several days later at the local hospital. After he shot Shasta, Arrington fled the scene and drove to Meridian, Mississippi, where he spent the night in a motel room. After talking with his father, Arrington returned to Newton the following day and turned himself in to the authorities.

Arrington was charged with murder as a habitual offender. At his first trial in August 2009, the jury deliberated for twelve hours and then reported to the trial judge that it was hopelessly deadlocked. The trial judge declared a mistrial. At the second trial held on April 8, 2010, the jury returned a guilty verdict of manslaughter after deliberating only thirty-one minutes. During sentencing, at the habitual-offender hearing, the State produced evidence of eleven felony convictions that the forty-five-year-old Arrington had committed in the State of Florida. The trial judge then sentenced Arrington to the maximum twenty-year sentence for manslaughter without eligibility for parole or probation.

*Arrington v. State,* 77 So.3d 542, 544-545 (Miss. Ct. App. 2011), *reh'g denied* Jan. 10, 2012.

The Mississippi Court of Appeals affirmed Arrington's conviction and sentence on November 29, 2011. *Id.* On May 24, 2012, he filed an application to proceed in the trial court with a motion for post-conviction relief, which was denied by the Mississippi Supreme Court on August 8, 2012. Arrington now brings the instant petition for habeas relief and asserts the same grounds that were raised on post-conviction review:

2

1.    Thermon Arrington's sentence is illegal and in violation of the 5th and 14th Amendment to the United States Constitution and Article 3, §14 and § 26, of the Constitution of the State of Mississippi. The indictment setting out the habitual information failed to allege the date of judgment or date of sentencing in either of the two (2) alleged prior convictions which the state set forth. The sentencing imposed upon Arrington is illegal.

2.    Ineffective Assistance of Counsel.[1]

In its order denying the application to proceed with a post-conviction motion, the

Mississippi Supreme Court found that Petitioner's allegations involving the indictment

were without merit and that Arrington failed to meet the ineffective assistance of counsel

claim standard of *Strickland v. Washington*, 466 U.S. 668 (1984).

**Standard of Review**

This Court's review of Petitioner's claims for federal habeas relief is governed by

the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996.  Under the Act,

this Court cannot grant a petitioner federal habeas corpus relief for any claim that was

adjudicated on the merits in a state court proceeding, unless the adjudication:

(1)    resulted in a decision that was **contrary to, or involved an unreasonable application of, clearly established Federal law**, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an **unreasonable determination of the facts in light of the evidence** presented in the State court proceeding.

(Emphasis added) 28 U.S.C. § 2254(d).

Under the first prong, the clauses "contrary to" and "unreasonable application of"

are independent bases for granting federal habeas relief. *Williams v. Taylor*, 529 U.S.

---

[1]ECF No. 1, pp. 4, 11.

362, 405 (2000).  A state court's decision is "contrary to" federal law if it contradicts Supreme Court precedent or reaches a different result on materially indistinguishable facts. *Id*.  Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court "correctly identifies the governing legal principle" but then "unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  The state court's decision must be objectively unreasonable, not merely erroneous or incorrect. *Rompilla v. Beard*, 545 U.S. 374, 380 (2005).

AEDPA's second prong requires that federal courts defer to a state court's factual determinations unless it is based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  Deference is critical because federal courts have no authority to grant habeas corpus relief simply because "we conclude, in our independent judgment, that a state supreme court's application of [federal] law is erroneous or incorrect." *Catalan v. Cockrell*, 315  F.3d 491, 493 (5th Cir. 2002).  Thus, we presume the state court's determination of a factual issue is correct, unless a petitioner rebuts the presumption with clear and convincing evidence.  28 U.S.C. §2254 (e)(1).

### Discussion

In ground one, Arrington argues that the habitual offender portion of the indictment was defective because it failed to comply with state law.  Rule 11.03(1) of the Mississippi Uniform Rules of Circuit and County Court Practice (URCCC)  requires the

indictment to "include both the principal charge and charge of previous convictions.  The indictment must allege with particularity the nature or description of the offense constituting the previous convictions, the state or federal jurisdiction of any previous conviction, and the date of judgment." *Id.*  Arrington argues that the indictment was defective because it failed to include the judgment or sentencing date of his previous convictions.

As an initial matter, because the question of the sufficiency of the indictment was considered and rejected by the Mississippi Supreme Court on post-conviction review, it is precluded from federal habeas corpus review.  *Morlett v. Lynaugh*, 851 F.2d 1521, 1523 (5th Cir. 1988) ("If the question of the sufficiency of the indictment [under state law] is presented to the highest state court of appeals, then consideration of the question is foreclosed in federal habeas corpus proceedings"); *McKay v. Collins*, 12 F.3d 66 (5th Cir. 1994) ("Where the state courts have held that an indictment is sufficient under state law, a federal court need not address that issue.").  The sufficiency of a state indictment is not a matter of federal habeas relief unless it is demonstrated that the indictment was so defective that the convicting court did not have jurisdiction.  *See Riley v. Cockrell*, 339 F.3d 308, 313–14 (5th Cir. 2003).  "State law dictates whether a state indictment is sufficient to confer a court with jurisdiction."  *Williams v. Collins*, 16 F.3d 626, 637 (5th Cir. 1994).  Because the indictment in this case meets all the requirements of state law,

Arrington cannot show that the indictment was so defective that it deprived the court of jurisdiction.

The habitual offender portion of the indictment charged Arrington as a habitual offender under Miss. Code Ann. § 99-19-81[2] based upon two prior felony convictions for the sale and possession of a controlled substance in the Circuit Court of Okaloosa County, Florida, in Case No. 92-00707-CFA and Case No. 92-00708-CFA.  The indictment also indicates that he was sentenced on October 6, 1992, to 12 years on Count 1 and 5 years on Count 2 in each case.  Under Mississippi law, the "mere omission of the judgment dates of prior qualifying convictions does not necessarily render a habitual-offender charge fatally defective.  Indeed, the central concern is *not* technical pleading, but instead the sufficiency of notice."  *Hill v. State*, 132 So.3d 1069, 1072 (Miss. Ct. App. 2014). Mississippi courts have repeatedly affirmed habitual-offender sentences where the indictment omitted prior judgment dates, but listed the jurisdictions where the convictions were obtained, and described the defendant's prior offenses, identifying the cause

---

[2] Miss. Code Ann. § 99-19-81 provides as follows:

Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

numbers and sentences for each offense. *Benson v. State*, 551 So.2d 188, 196 (Miss. 1989). Thus, under state law, the omission of judgment dates is not fatal where the "information pertaining to the date of the judgment was substantially set forth in the indictment and ... sufficient information was afforded the defendant to inform him of the specific prior convictions upon which the State relied for enhanced punishment to comply with due process." *Id*.

In rejecting this claim on post-conviction review, the Mississippi Supreme Court implicitly found that the indictment alleged sufficient facts to apprise Arrington that he was being charged as a habitual offender as it provided the necessary information to afford him access to the dates of the judgment. Accordingly, the court necessarily, though not expressly, held that Mississippi courts had jurisdiction. *Murphy v. Beto*, 416 F.2d 98, 100 (5th Cir. 1969) ("[J]urisdiction to try an offense includes jurisdiction to determine whether the offense is properly charged."); *Lockett v. Anderson*, 230 F.3d 695 (5th Cir. 2000). Because the indictment was found sufficient under state law, this court has no basis for granting relief and "need not address" the issue. *McKay*, 12 F.3d at 68; *Alexander v. McCotter*, 775 F.2d 595, 599 (5th Cir. 1985) (the state court's holding that "the indictment [was] not fundamentally defective should end the inquiry.")[3]

---

[3]Even if the Court were to conduct a due process analysis, Arrington was provided the requisite due process protections. The United States Supreme Court has held that an indictment is constitutionally sufficient if it both informs the defendant of the accusation against him so as to enable him to prepare his defense and affords him protection against double jeopardy. *United States v. Debrow*, 346 U.S. 374 (1953). The Due Process Clause of the Fourteenth Amendment

Arrington claims in ground two that his trial and appellate counsel were ineffective in failing to challenge the indictment as defective.  He maintains that had counsel challenged the habitual offender portion of the indictment, the habitual language would have been removed or his sentence would have been reversed on appeal.

To warrant relief, Arrington must prove that "counsel's performance was deficient" and "the deficient performance prejudiced the defense" so gravely as to "deprive the defendant of a fair trial; a trial whose result is unreliable." *Strickland,* 466 U.S. at 687.  Counsel's performance is deficient when the representation falls below an objective standard of reasonableness; it is prejudicial when a reasonable probability exists "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694; *Ogan v. Cockrell,* 297 F.3d 349, 360 (5th Cir. 2002).

AEDPA additionally requires that a petitioner show that the state court's adjudication of his ineffective assistance of counsel claims was an "unreasonable application" of *Strickland*.  "Surmounting *Strickland's* high bar is never an easy task" and "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Vasquez v. Thaler,* 505 F.App'x 319, 326 (5th Cir.

---

requires that "whatever the charging method the state chooses to employ, it must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense." *Brown v. Cain*, No. Civ. A. 99–2667, 2001 WL 96410 at *2 (E.D.La., Feb. 2, 2001); *Cole v. Arkansas*, 333 U.S. 196, 201 (1948) (elementary principles of due process require that accused be informed of specific charge against him).  For the reasons stated herein, the indictment in this case provided more than adequate information to apprise Arrington of the charges against him in order to prepare a defense as well as protection against double jeopardy.

2013) (quoting *Premo v. Moore*, 131 S.Ct. 733, 739–40 (2011) (internal quotation marks and citations omitted)).

It is well settled that counsel's failure to raise a meritless argument cannot form the basis of a successful ineffective assistance of counsel claim.  *See Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006) (holding that counsel was not deficient in failing to present a meritless argument) (citation omitted); *Smith v. Puckett*, 907 F.2d 581, 585 n. 6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim.").  As noted *supra*, the state courts implicitly found that Arrington had sufficient notice that he was being prosecuted as a habitual offender for the death of Shasta Smith.  He has also never denied the two prior convictions alleged in the indictment nor challenged the evidence presented at the sentencing hearing of his other prior convictions.  Accordingly, any challenge to the indictment would have been futile, and Arrington cannot show that a challenge to the indictment would have yielded a different result.  The transcript from his sentencing hearing reflects that immediately following his conviction, the trial court, citing the egregious nature of the crime, announced that Arrington would be sentenced to the maximum term of 20 years for manslaughter.  Miss. Code Ann. § 97-3-25 (1).[4]  Upon hearing additional evidence from

---

[4]Miss. Code Ann. § 99-3-25 (1) provides as follows:

Except as otherwise provided in this section, any person convicted of manslaughter shall be fined in a sum not less than Five Hundred Dollars ($500.00), or imprisoned in the county jail not more than one (1) year, or both, or

the State concerning 11 prior convictions, the sentence remained unchanged and Arrington was sentenced as a habitual offender pursuant to Miss. Code Ann. § 99-19-81. Absent a showing that counsel was deficient, or that he suffered actual prejudice as a result, Arrington has failed to show that the state court's rejection of this claim was contrary to an unreasonable application of *Strickland*.

For these reasons, it is the recommendation of the undersigned United States Magistrate Judge that this habeas petition should be dismissed with prejudice.

### NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections.  Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective

---

in the custody of the Department of Corrections not less than two (2) years, nor more than twenty (20) years.

December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415,

1428-29 (5th Cir. 1996).

    This the 15th day of September 2014.

                                          /s/  Linda R. Anderson
                              UNITED STATES MAGISTRATE JUDGE